STATE, RESPONDENT, *v.* WONG FONG, APPELLANT.

(No. 5,800.)

(Submitted November 24, 1925. Decided December 14, 1925.)

[241 Pac. 1072.]

*Criminal   Law—Poisons—Narcotics—Unlawful   Sale—Statute Controlling — Evidence — Sufficiency — Exhibits — Admissibility—Preliminary Proof—Appeal.*

Narcotics—Illegal Sale—Statute Controlling—Information—Sufficiency.
   1. *Held,* that section 3189, Revised Codes of 1921, enacted in 1921 as section 1, Chapter 202, Laws of 1921, prohibiting the sale, *inter alia,* of coca leaves or a derivative thereof, supersedes section 3186, enacted in 1911, and section 11239, enacted in 1895, so far as it comprehends or conflicts with the subject matter of the two latter sections, and that the trial court's holding that an information charg-
   75 Mont.—6

ing the unlawful sale "of cocaine, a derivative of coca leaves" was based upon that section was correct.

Same—"Cocaine"—Nature of Drug—Evidence—Sufficiency.
2.   In a prosecution for the unlawful sale of "cocaine, a derivative of coca leaves," a chemist testified for the state that cocaine is an active alkaloid of the coca leaf but did not state that it was a derivative thereof. *Held*, in answer to the contention that in failing to so testify the state had not proved its case, that an alkaloid of the leaf necessarily is a derivative thereof, and that the contention has no merit.

Same—Exhibits—Admissibility in Evidence—Proof Required.
3.   To render an exhibit (a package of cocaine sold to an officer and kept in a vault until trial) admissible in evidence, the state was required to do no more than to identify it and make a *prima facie* showing that there had been no substantial change in it since it was obtained, it not being incumbent upon the prosecution to prove by affirmative testimony that it could not have been tampered with.

Same—Judgment of Conviction not Reversible for Technical Error in Admitting Unimportant Testimony.
4.   Under the rule that the supreme court will not reverse a judgment of conviction for mere technical irregularities not affecting injuriously the substantial rights of appellant, for alleged error in overruling objections to several questions claimed to have been leading but which were of no special importance but merely explanatory in character, a new trial will not be ordered.

[1]   Poisons, 31 Cyc., p. 899, n. 22 New, 23.
[2]   Poisons, 31 Cyc., p. 899, n. 23.
[3]   Criminal Law, 16 C. J., sec. 1222, p. 618, n. 16, 17, 18.
[4]   Criminal Law, 17 C. J., sec. 3751, p. 368, n. 5.

*Appeal from District Court, Yellowstone County; O. F. Goddard, Judge.*

WONG FONG was convicted of selling cocaine, and appeals from the judgment and the order denying him a new trial. Affirmed.

*Messrs. Myers & Huntington* and *Mr. Guy C. Derry,* for Appellant, submitted a brief; *Mr. Henry L. Myers* argued the cause orally.

*Mr. L. A. Foot,* Attorney General, and *Mr. S. R. Foot,* Assistant Attorney General, for the State, submitted a brief; *Mr. S. R. Foot* argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

Wong Fong, found guilty of selling cocaine, was sentenced to imprisonment in the state prison at hard labor for an indeterminate term of not less than five nor more than ten years and to pay a fine of $1,000. He moved for a new trial, which by order the court denied. He has appealed from the judgment and the order.

1. The information charges that at a time and place the defendant "committed the crime of selling and disposing of narcotics," in that he "did then and there willfully, wrongfully, unlawfully, and feloniously sell and dispose of, at retail, certain narcotics, to-wit, one-fourth dr. of cocaine, a derivative of coca leaves, to another person," and so forth.

In this court the defendant's case has been presented with [1] great sincerity and ingenuity. It is argued that the judgment is void for the reason that it is impossible to tell under what section of the Codes the information was drawn. It is pointed out that the same subject matter is covered in some measure by sections 3186, 3189, and 11239 of the Revised Codes of 1921, and that different penalties are prescribed for infractions of these several statutes.

Section 3189 was enacted as section 1 of Chapter 202 of the Session Laws of 1921, page 400. The court, having this section (3189) in mind, and without objection, instructed the jury that the statute upon which this information is based, "or so much thereof as is applicable to this particular case, reads as follows: 'It shall be unlawful for any person to sell, barter, exchange, distribute, give away, or in any manner dispose of, at retail, or to a consumer, opium or coca leaves, or any compound, manufacture, salt, derivative, or preparation thereof, within this state, except upon the original written prescription of a duly licensed physician, duly licensed to practice medicine in Montana.' " Penalties for the violation of this section are provided for in section 3202, Revised

Codes of 1921, as amended by the Nineteenth Legislative Assembly. (Sess. Laws 1925, p. 39.) It will be noted that the word "cocaine" does not appear in section 3189, which is a part of the Political Code; but it is one of the drugs specified in section 11239, enacted in 1895 as a part of the Penal Code, which provides that every person who sells, or in any way disposes of, to another person, any morphine, opium, cocaine, chloral hydrate or any of their compounds, except to licensed physicians, or on the authority of a certificate of such licensed physician, is punishable by a fine not exceeding $200.

In section 3186, enacted in 1911, reference is made to opium, morphine, alkaloid cocaine and other drugs. Here the penalty is not less than $50 nor more than $500, or by imprisonment in the county jail for a period of not less than sixty days nor more than 100 days, or by both such fine and imprisonment. (Sec. 3188, Rev. Codes 1921.)

An examination of the statutes convinces us that the legislative assembly, in enacting Chapter 202 of the Laws of 1921, intended thereby to supersede the provisions of sections 11239 and 3186 in so far as they relate to opium or coca leaves, or any compound, manufacture, salt, derivative or preparation thereof. The legislative purpose undoubtedly was to curb the illicit traffic in the drugs comprehended which, as everybody knows, then was becoming a serious menace to the body politic. The last section of Chapter 202 provided heavy penalties for an infraction of the Act. An attempt to increase these penalties in 1923 failed (*State* v. *Mark,* 69 Mont. 18, 220 Pac. 94), but in 1925 the legislative assembly again took up the subject and by amending section 3202 (formerly Chapter 202, sec. 15) provided the heavy penalties which now obtain (Sess. Laws of 1925, p. 39), and under the weight of which the defendant suffers.

To the extent, then, that section 3189 comprehends, or conflicts with, the subject matter of sections 3186 and 11239,

it supersedes those sections and is controlling. (*State* v. *Miller,* 69 Mont. 1, 220 Pac. 97; *In re Naegele,* 70 Mont. 129, 224 Pac. 269.) The court's assumption that the information rests upon section 3189 was correct.

The main argument for defendant, however, proceeds upon [2] the hypothesis that the state failed to prove the essential allegation that the substance which the defendant sold was derivative of coca leaves. There was ample proof that the defendant sold a package of cocaine to Davis, the state's witness. But is cocaine a derivative of coca leaves? The only evidence upon the point was given by one Williamsen, a chemist, who testified that he found the contents of the package which the defendant sold "to be cocaine; cocaine is an active alkaloid of the coca leaf or leaves." It is insisted that, as the witness did not tell the jury that cocaine is a derivative of coca leaves, there is a total failure of proof on this essential allegation. Many definitions of the words "alkaloid," "derivative," and "cocaine" are presented in the brief. After a comparison of these and an analysis of the proof we think defendant's point, though ingenious, is not substantial.

The witness said: "Cocaine is an active alkaloid of the coca leaf or coca leaves." The key to the interpretation of this sentence is "of." This preposition as here employed means "from" (Webster's New International Dictionary); it denotes origin, source, or that from which something issues, proceeds, or is derived. "Do men gather grapes of thorns, or figs of thistles?" (Matthew, vii: 16. Century Dictionary.) A derivative is that which is derived; anything obtained or deduced from another. (Same authorities.) The use of the word "alkaloid" by the witness was not important. He might as well have used the comprehensive words "substance." Had he said "substance," probably no question would have been raised. An alkaloid from coca leaves necessarily is a derivative of coca leaves.

2. It is insisted that the court erred in overruling the ob-
[3]   jection of defendant to the admission in evidence of the
package alleged to have been sold to Davis.

Peter Lauritsen and Henry Davis, at the time the offense is
alleged to have been committed were federal narcotic agents
Davis testified that he went to the door of Wong Fong's
office or drugstore, but the door was closed. He knocked,
the defendant opened the door and Davis went in. Being
asked what he wanted, Davis replied, "Five dollars' worth
of cocaine." Defendant said, "Give me the $5." And then,
said Davis: "I gave him the $5, and he says, 'Step outside,'
and I stepped outside. In a few minutes he proceeded to open
the door and stepped out in the hallway and handed me the
bindle of cocaine." Lauritsen saw Davis receive the package
from the defendant; this Davis retained in his hand until he
gave it to Lauritsen, his superior. The two then went to the
Columbia Apartments where they placed their initials and the
date upon the package. Thereafter Lauritsen gave it to
Under-sheriff Stone. It was then in the same condition in
which it was when received by Davis, except that Lauritsen
"took a very small speck of it on a knife blade to test it,"
as he said. At the trial both men identified the package.
Stone testified that Lauritsen gave him the package which he,
Stone, retained in his possession at all times until he gave
it to the county attorney on the morning of the trial, and
said: "It is in the same condition as when I received it from
Mr. Lauritsen except that Mr. Harry Williamsen opened it
in my office and took a small particle out and examined it.
*   *   *   This is the package I received from Mr. Lauritsen."

On cross-examination the witness testified that when he
received the package from Lauritsen he put it in an en-
velope, which he referred to as "this envelope," sealed it and
placed it in a lock box "in the vault." While the vault is
open during the day the place where the package was kept
was not. The only time the witness had occasion to see the

package after he put it in the lock box was when the witness Williamsen "undertook to analyze it." These questions and answers followed: "Q. That is the only time you had it in your possession, and when Mr. Williamsen analyzed it? A. Yes, sir. Q. Then you don't know whether any one else handled it or not during that time of course, do you? A. No, I do not." Upon this state of the record it is urged that it was not shown that the package was in the same condition as when delivered to Stone. Counsel say there was opportunity for tampering with it and changing or substituting its contents.

We do not see merit in this position. All the positive testimony indicates that the package, when offered in evidence, was substantially in the same condition as when received from the defendant. It was not incumbent upon the state to prove that it could not have been tampered with. It was not necessary that all possibility of its having been tampered with should be excluded by affirmative testimony. (*State* v. *Cook,* 17 Kan. 392.) It was only necessary to identify the package and to make a *prima facie* showing that there had been no substantial change in it to warrant its introduction in evidence. "Articles which are shown by the evidence to be connected with the crime, or which serve to unfold or explain it, may be accepted in evidence, provided they are properly identified," and provided there has been "no substantial change" in them. (*State* v. *Byrne,* 60 Mont. 317, 199 Pac. 262; 16 C. J. 618.) If the *prima facie* showing made by the state were incorrect, the way was open to defendant to show the contrary; but this he did not attempt to do. The court ruled correctly.

3. Counsel for defendant objected, unsuccessfully, to three [4] questions on the ground that they were leading. None of these was of any special importance; they were explanatory in character and under the circumstances were not harmful to the defendant. Speaking upon this very question in *State* v. *Kanakaris,* 54 Mont. 180, 169 Pac. 42, it was as-

serted that: "This court does not reverse a judgment of conviction for mere technical irregularities, which could not affect injuriously any substantial rights of the accused." It is the duty of this court, after hearing an appeal in a criminal case, to give judgment without regard to technical errors or defects which do not affect the substantial rights of the parties. (Sec. 12125, Rev. Codes 1921; *State* v. *McConville,* 64 Mont. 302, 209 Pac. 987; *State* v. *Russell,* 73 Mont. 240, 235 Pac. 712.)

The judgment and order are affirmed.

*Affirmed.*

ASSOCIATE JUSTICES HOLLOWAY, GALEN, STARK and MATTHEWS concur.